NOT FOR PUBLICATION                                        (Doc. Nos. 9, 10)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

---

| | : | |
| Todd A. DUPELL, | : | |
| | : | |
| Plaintiff, | : | Civil No. 16-278 (RBK/KMW) |
| | : | |
| v. | : | **Opinion** |
| | : | |
| FRANKLIN TOWNE CHARTER | : | |
| SCHOOL, et al., | : | |
| | : | |
| Defendant(s). | : | |

---

**KUGLER**, United States District Judge:

This matter comes before the Court on Plaintiff Todd A. DuPell's ("Plaintiff") Complaint against Defendants Franklin Towne Charter School, Franklin Towne School Board of Trustees, Joseph M. Venditti, Patrick Field, and Cynthia A. Marelia (collectively, "FTCS Defendants"), and Defendants OmniVest Properties Management and B. Robin Eglin ("OPM Defendants"). Plaintiff asserts claims of Pennsylvania Whistleblower Law, wrongful discharge, interference and retaliation, fraud in the inducement and deceit, promissory estoppel, breach of contract, negligent misrepresentation, intentional infliction of emotional distress, and tortious interference with contract. Currently before the Court is FTCS Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 10)[1] and OPM Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 9). For the reasons

---

[1] FTCS Defendants also aver in their Motion that this Court lacks personal jurisdiction over FTCS Defendants. The Court considers this argument despite Defendants' failure to bring the Motion pursuant to Federal Rule of Civil Procedure 12(b)(2).

expressed below, FTCS Defendants' Motion to Dismiss is **GRANTED IN PART** and OPM Defendants' Motion to Dismiss is **GRANTED**.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is a teacher who was serving in a tenured position of Principal at an elementary school in Morrisville, Pennsylvania. Compl. ¶¶ 19–20, 36. At some point in 2014, he applied for a Principal job opening at the Franklin Towne Charter School ("FTCS") elementary school. *Id.* ¶ 21. FTCS recruited for the position through Omnivest Properties Management ("OPM"), which advertised it via newspapers and magazines, some of which were strictly distributed in New Jersey. Pl.'s Opp'n Br. 13. Plaintiff contends that FTCS Defendants' normal procedure of hiring teachers was to post openings on an online school jobs database, PAREAP. Compl. ¶ 22. However, FTCS Defendants supposedly used OPM in this instance in order to conceal the high turnover rate of Principals at FTCS over the past several years. *Id.* ¶ 24.

Plaintiff submitted his resume, which contains his home address in New Jersey, to FTCS Defendants. Pl.'s Opp'n Br. 12. FTCS Defendants contacted Plaintiff in his New Jersey residence on multiple occasions via telephone and email to schedule interviews. *Id.* at 12–13. Plaintiff completed an initial interview with Chief Executive Officer Joseph M. Venditti ("Venditti") and Chief Academic Officer Patrick Field ("Field"), and a subsequent interview with Venditti, Field, Board President Cynthia A. Marelia ("Marelia"), and the Assistant Principal. Compl. ¶¶ 25, 27. Plaintiff claims that during the interviews, Field and Venditti assured Plaintiff that FTCS had a "low churn rate" and would provide Plaintiff with a long career with growth opportunities. *Id.* ¶¶ 26, 28. When asked, Field and Venditti allegedly explained that Field left the Principal role because he was "moving on to bigger and better things" at the FTCS high school. *Id.* ¶ 25. Furthermore, they claimed that the Assistant Principal did not want the job

because of the additional responsibility. *Id.* ¶ 32. Based on Venditti's and Field's statements, Plaintiff alleges, he believed the position would be one with longevity. *Id.* ¶ 30. Following the interviews, Plaintiff and Defendant negotiated the employment contract over multiple telephone and email conversations while Plaintiff was in New Jersey. Pl.'s Opp'n Br. 13. On June 8, 2014, Plaintiff and FTCS entered into a two-year employment contract to last until at least June 30, 2016. Compl. ¶ 31. Plaintiff believed that thereafter the contract would be renewed annually pursuant to common practice in education. *Id.* ¶ 37. The contract permitted termination for cause, among other reasons. Def.'s Br. Ex. B, at 3.

Plaintiff began his employment on July 14, 2014. *Id.* ¶ 50. Within the initial few days, Plaintiff allegedly learned that Field had actually been removed as Principal because of public outcry over acts of misconduct, including shoplifting and using physical force against a student. *Id.* ¶¶ 38–39. Moreover, the Assistant Principal had refused the position because he "knew what they were going to do" to the person hired for it. *Id.* ¶ 32. Plaintiff also discovered that Field was to be his supervisor. *Id.* ¶ 40. Plaintiff pleads that if he had known of Field's history he would have not have decided to leave his prior job. *Id.* ¶ 44. Because Field had wanted to remain Principal, the Complaint alleges, Field and Venditti began harassing Plaintiff soon after he became Principal. *Id.* ¶ 10. For instance, during a Back to School Night presentation in September 2014, Venditti allegedly yelled at Plaintiff in front of parents and staff members for improperly drafting handouts that Venditti had previously approved. *Id.* ¶¶ 52–53. During an award ceremony dinner in November 2014, Venditti made a speech before an audience of parents, students, board members, and Plaintiff's spouse during which he noted that FTCS had seen many Principals in recent years and Plaintiff should "start getting his resume together." *Id.* ¶ 64. Plaintiff was humiliated and embarrassed as a result of these comments. *Id.* ¶¶ 53, 64.

Plaintiff also alleges he suffered retaliation as a result of objecting to various acts of misconduct he discovered on FTCS Defendants' part. Plaintiff supposedly learned that FTCS filled many key administrative positions at the school with family members of school board members, in violation of FTCS's charter application. *Id.* ¶¶ 55–56. Plaintiff also claims that there were students who qualified for an English as a Second Language ("ESL") program, but FTCS was not providing ESL services yet falsely reporting that such a program existed. *Id.* ¶¶ 65–67. In addition, FTCS's Professional Development plan allegedly did not include ESL, which contravened the Pennsylvania Department of Education ("PADOE") Code. *Id.* ¶ 67. Plaintiff further asserts that FTCS was billing the PADOE for a full-time kindergarten program yet actually providing a program that was forty minutes too short. *Id.* ¶¶ 70–73. According to the Complaint, Plaintiff complained to Field and Venditti about all the above violations, but they ignored his complaints and retaliated against him. *Id.* ¶¶ 56, 69, 74. In May 2015, Field and Venditti warned Plaintiff that a parent was submitting a petition to replace Plaintiff's role as Principal with Field, but they had allegedly fabricated the story. *Id.* ¶¶ 77–79. On June 17, 2015, Venditti told Plaintiff to write his own performance evaluation and make it a "good one, because Field wanted to pre-write a poor performance evaluation for Plaintiff and keep it in Venditti's desk "just in case." *Id.* ¶ 81–82.

Plaintiff additionally pleads that Field and Venditti obstructed his job. They ignored Plaintiff's request to hire an art teacher and guidance counselor but continued employing a person who had no job responsibilities but was the wife of a former school board member. *Id.* ¶¶ 57–62. Field and Venditti also allegedly rejected a teacher Plaintiff had hired by sending her home on her first day and hired a friend of Venditti's instead. *Id.* ¶¶ 82, 85. When Plaintiff

refused to place an employee on an improvement plan because it was prohibited by PADOE policy, Venditti forced Plaintiff to do so. *Id.* ¶¶ 89–91.

On August 28, 2015, Plaintiff requested a meeting with School Board President Cynthia A. Marelia to discuss the above incidents. *Id.* ¶ 93. In response to the request, Field and Venditti supposedly increased their retaliatory behavior by giving Plaintiff his first poor performance evaluation. *Id.* ¶ 95. During Plaintiff's meeting with Marelia, Plaintiff described Field's and Venditti's alleged violations of the charter application and PADOE Code, and informed her he intended to report the misconduct. *Id.* ¶¶ 96–98. Marelia said in reply, "You know we cannot move forward with you as Principal. Where do we go from here Todd?" *Id.* ¶ 100. Plaintiff interpreted the response as a termination, and when Marelia requested Plaintiff sign a notice of resignation Plaintiff did so. *Id.* ¶¶ 102–04, Def.'s Br. Ex. A.

On January 15, 2016, Plaintiff filed a Complaint against FTCS Defendants and OPM Defendants bringing claims of violation of the Pennsylvania Whistleblower Law, wrongful discharge, interference and retaliation, fraud in the inducement and deceit, promissory estoppel, breach of contract, negligent misrepresentation, intentional infliction of emotional distress, and tortious interference with contract (Doc. No. 1). On March 21, 2016, OPM Defendants filed a Motion to Dismiss (Doc. No. 9), and on March 28, 2016, FTCS Defendants filed a Motion to Dismiss (Doc. No. 10). On April 26, 2016, Plaintiff and OPM Defendants filed a Stipulation whereby Plaintiff agreed to dismiss all claims against B. Robin Eglin and all claims against OPM except the claim for negligent misrepresentation (Doc. No. 15).

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts

accept all factual allegations as true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff

may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)

(citations omitted). A complaint survives a motion to dismiss if it contains sufficient factual

matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether

the non-moving party will succeed on the merits, but "whether they should be afforded an

opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec.

Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a

"plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S.

662, 678–79 (2009).

　　　In making this determination, the court conducts a three-part analysis. *Santiago v.

Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the

elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the

court should identify allegations that, "because they are no more than conclusions, are not

entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "[T]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," do not suffice.

*Id.* at 131 (quoting *Iqbal*, 556 U.S. at 678). Finally, "where there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give

rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). This plausibility

determination is a "context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive a motion to dismiss where a court can only infer that a claim is merely possible rather than plausible. *Id.*

### III.     CHOICE OF LAW

The employment agreement between Plaintiff and FTCS contains a choice of law provision that selects Pennsylvania law. A federal court sitting in a diversity case must "apply the substantive law of the state whose laws govern the action." *Kleinknecht v. Gettysburg College*, 989 F.2d 1360, 1365 (3d Cir. 1993) (citations omitted). In order to determine which state's substantive law to apply, a federal court exercising diversity jurisdiction will apply the conflict of law rules of the forum state. *Bayer Chems. Corp. v. Albermarle Corp.*, 171 F. App'x 392, 398 (3d Cir. 2006). New Jersey generally upholds choice-of-law clauses, so long as the clause "does not violate New Jersey's public policy." *North Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 730 A.2d 843, 847 (N.J. 1999) (citations omitted). A choice-of-law provision will be enforced unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* at 847–48 (citations omitted). Neither exception applies here. Pennsylvania as the chosen state has a substantial relationship to the parties, being the state where the events at FTCS took place. Further, New Jersey does not have a materially greater interest than Pennsylvania in the determination of this matter, as its connection centers around Plaintiff's residence and FTCS Defendants' recruiting efforts in New Jersey.

## IV.      DISCUSSION

### A.      Personal Jurisdiction

FTCS Defendants argue that Plaintiff fails to demonstrate that the State of New Jersey

has personal jurisdiction over them. In general, "once the defendant raises the question

of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the

evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v.

Shushan,* 954 F.2d 141, 146 (3d Cir. 1992). The plaintiff may rely on the complaint, affidavits,

or other competent evidence. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir.

2009). Where the court chooses not to conduct an evidentiary hearing, the plaintiff need only

demonstrate a prima facie case of jurisdiction to defeat a motion to dismiss. *See Carteret Sav.

Bank*, 954 F.2d at 142 n.1. Thus, the Court "must accept all of the plaintiff's allegations as true

and construe disputed facts in favor of the plaintiff." *Id.*

To exercise personal jurisdiction over a defendant, a federal court sitting in diversity must

undertake a two-step inquiry. *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir. 1998).

First, the court must apply the relevant state long-arm statute to see if it permits the exercise of

personal jurisdiction. *Id.*; *see Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting Fed.

R. Civ. P. 4(k)) ("[A] federal district court may assert jurisdiction over a nonresident of the state

in which the court sits to the extent authorized by the law of that state."). Second, the court must

apply the principles of due process. *IMO Indus.*, 155 F.3d at 259. In New Jersey, this inquiry is

conflated into a single step because the New Jersey long-arm statute permits the exercise

of personal jurisdiction to the fullest extent permissible under the Due Process Clause. *Id.*

Due process permits the exercise of personal jurisdiction over a nonresident defendant

where the defendant has "certain minimum contacts with [the forum] such that the maintenance

of the suit does not offend traditional notions of fair play and substantial justice." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987) (citations omitted). A plaintiff may establish jurisdiction by proving the existence of either general or specific jurisdiction. *Id.* To establish general jurisdiction, the plaintiff must "show significantly more than mere minimum contacts," and that the defendant's forum contacts are "continuous and substantial." *Id.*

Establishing specific jurisdiction involves a three-part inquiry. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). First, "the defendant must have purposefully directed his activities at the forum." *Id.* (citations omitted). Second, the plaintiff's claim must "arise out of or relate to at least one of those specific activities." *Id.* (internal quotations and citations omitted). Third, courts may consider "additional factors to ensure that the assertion of jurisdiction otherwise comports with fair play and substantial justice." *Id.* (internal modifications and citations removed). Although "[a]ctivities of a party's agent may count toward the minimum contacts necessary to support jurisdiction," *Grand Entm't Grp. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993), "[j]urisdiction is proper . . . [only] where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (citations omitted). "The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

*1. Minimum Contacts*

Plaintiff asserts that FTCS Defendants had minimum contacts with New Jersey ("the State") because they purposefully reached into New Jersey by targeting, recruiting, inducing, and

hiring Plaintiff, a New Jersey citizen. Specifically, Plaintiff alleges that Defendants distributed mailings, made phone calls, and sent emails to Plaintiff's home, ultimately culminating the relationship with Plaintiff in an employment agreement.

The Third Circuit dictates that in deciding whether to exercise personal jurisdiction in a breach of contract dispute, a district court must consider "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy,* 238 F.3d 248, 256 (3d Cir. 2001). In *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.,* 75 F.3d 147 (3d Cir. 1996), the Third Circuit stated that "informational communications in furtherance of [a contract between a resident and a nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction." *Id.* at 152. However, personal jurisdiction can arise from a nonresident defendant's contract with a forum resident where "the defendant solicited the contract or initiated the business relationship leading up to the contract." *Id.* Accordingly, the Third Circuit found that a district court properly exercised personal jurisdiction over a nonresident defendant who had "sought out" the contract by placing a telephone call to the plaintiff's office in the forum state and eventually entering into a fee agreement with the plaintiff. *Remick*, 238 F.3d at 256. The court additionally noted the "repeated 'informational communications' during the course of the contractual relationship" between the nonresident defendant and forum state plaintiff. *Id.* (citing *Grand Entm't Grp., Ltd,* 988 F.2d at 482 ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction.")). The Third Circuit also found that personal jurisdiction existed where the defendant, a Barbados hotel, "deliberately reached into Pennsylvania to target two of its citizens" by "mail[ing] [plaintiff] a brochure and trad[ing]

phone calls with [him] for the purpose of forming an agreement to render spa services."
*O'Connor v. Sandy Lane Hotel,* 496 F.3d 312, 318 (3d Cir. 2007).

Given the totality of circumstances in this case, this Court finds that FTCS Defendants have sufficient minimum contacts with New Jersey. Plaintiff asserts that FTCS Defendants advertised the Principal position in newspapers and magazines strictly distributed in New Jersey. In addition, FTCS Defendants allegedly received Plaintiff's resume bearing his New Jersey address and subsequently contacted Plaintiff via numerous phone calls and emails to schedule interviews and negotiate an employment contract. The Court finds that such evidence of FTCS Defendants targeting New Jersey candidates for the Principal position and conducting extended negotiations with Plaintiff in New Jersey are sufficient to show they have minimum contacts with the State under New Jersey law.

*2. Relatedness*

The second prong of the specific jurisdiction analysis requires the plaintiff's claim to arise out of or relate to at least one of the defendant's specific contacts. The Third Circuit has stated that "[s]pecific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test." *O'Connor*, 496 F.3d at 323. The but-for standard is satisfied where "the plaintiff's claim would not have arisen in the absence of the defendant's contacts." *Id.* at 319. However, "there is no 'specific rule' susceptible to mechanical application"; the relatedness element is a fact-sensitive inquiry that "should hew closely to the reciprocity principle upon which specific jurisdiction rests." *Id.*

This litigation arises out of FTCS Defendants' purposeful contacts with Plaintiff. FTCS Defendants initiated the relationship and eventually executed the employment contract by communicating with Plaintiff through email and telephone calls. It is the breach of this contract

and other claims related to the employment relationship that directly form the basis of the Complaint. Plaintiff's claims are thus closely tailored to the obligations that arise from FTCS Defendants' purposeful contacts, so the Court hence finds that the claims are closely related.

   *3. Fair Play and Substantial Justice*

   Once a plaintiff establishes the minimum contacts prong of the inquiry, a court may exercise personal jurisdiction over a defendant so long as the exercise of that jurisdiction "comport[s] with fair play and substantial justice." *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004) (citations omitted). "To defeat jurisdiction based on this fairness inquiry, a defendant must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* "The Supreme Court indicated that lower courts addressing the fairness question may consider the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (internal quotations omitted). Only in "rare cases [do the] minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant . . . purposefully engaged in forum activities." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cty.,* 480 U.S. 102, 116 (1987) (internal quotations omitted).

   FTCS Defendants fail to establish a compelling reason why jurisdiction in New Jersey would offend traditional notions of fair play and substantial justice. They contend only that performance of the employment contract, the alleged breach, and the related claims took place in Pennsylvania. These arguments are inapposite, as they do not address the burden on FTCS Defendants, Pennsylvania's interest in adjudicating the dispute, or efficient resolution of the

case; they merely duplicate the minimum contacts arguments. As such, FTCS Defendants fail to demonstrate other considerations that should override the reasonableness of jurisdiction in this case and the fair play and substantial justice factor favors the exercise of personal jurisdiction in this case.

In conclusion, the Court finds that Plaintiff has met his burden to establish personal jurisdiction over FTCS Defendants, and the Motion to Dismiss on this ground is denied.[2]

**B.      Count I — Pennsylvania Whistleblower Law**

FTCS Defendants' seek dismissal of the claim under the Pennsylvania Whistleblower Law for failing to plead acts of whistleblowing activity, acts of retaliation, and a temporal or causal connection between the whistleblowing activity and retaliation asserted.

The Pennsylvania Whistleblower Law ("PWL") prohibits an employer from "retaliat[ing] against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee . . . makes a good faith report or is about to report . . . an instance of wrongdoing." 43 Pa. Stat. § 1423(a). An act of wrongdoing is any violation of a statute or regulation that is not of a merely technical or minimal nature. *Id.* § 1422. A plaintiff must also show "some evidence of a connection between the report of wrongdoing and the alleged retaliatory acts." *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1200 (Pa. 2001).

FTCS Defendants first argue that Plaintiff fails to allege any good faith reports of wrongdoing. The Complaint, however, avers that Plaintiff reported to Venditti the school's violation of the PADOE Code regarding ESL programs and overbilling on the kindergarten program. Such violations of state laws constitute wrongdoings under the PWL. Although FTCS

---

[2] Plaintiff also argues that this Court has general jurisdiction over Defendants. Because the Court concludes that it has specific jurisdiction over Defendants, the Court does not reach the question of general jurisdiction.

Defendants counter that Plaintiff inaccurately characterizes the programs as noncompliant, such contentions are inappropriate at the motion to dismiss stage. Plaintiff also properly pleads retaliation by FTCS Defendants: he states that FTCS terminated him in response to his threat to report the school's unlawful conduct. Further, Plaintiff avers that the alleged termination occurred immediately after Plaintiff communicated his intent to blow the whistle. It appearing that the Complaint supports the requirements of a claim under the PWL, the Court denies the Motion to Dismiss Count I.

### C.    Count II — Wrongful Termination in Violation of Public Policy

FTCS Defendants move to dismiss Count II for failure to state a claim for relief.  Under Pennsylvania law, the tort of wrongful discharge is available only where the employment relationship at issue is at will. *Phillips v. Babcock & Wilcox*, 503 A.2d 36, 38 (Pa. Super. Ct. 1986). Because Plaintiff's employment was governed by a contract that included a just cause clause, the Court must dismiss the wrongful termination claim with prejudice.

### D.    Count III — First Amendment Retaliation

FTCS Defendants seek to dismiss Plaintiff's First Amendment retaliation claim under 42 U.S.C. § 1983. Other federal courts in Pennsylvania have held charter schools to constitute municipalities that can be sued as "persons" under § 1983. *See Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 908 F. Supp. 2d 597, 605 (M.D. Pa. 2012); *Irene B. v. Phila. Acad. Charter Sch.*, No. Civ. A. 02-1716, 2003 WL 24052009, at *11 (E.D. Pa. Jan. 29, 2003). "A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001). In order to properly state a First Amendment retaliation claim and survive a motion to dismiss, "a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2)

that the protected activity was a substantial factor in the alleged retaliatory action." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). "The first factor is a question of law; the second factor is a question of fact." *Id.* at 241. A plaintiff can prove that his speech was protected activity by showing that: (1) in making it, Plaintiff spoke as a citizen, (2) the statement involved a matter of public concern, and (3) Plaintiff's employer did not have "an adequate justification for treating the employee differently from any other member of the general public" as a result of the statement he made under the *Pickering* test. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *see also Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563, 568 (1968).

The Court finds that Plaintiff adequately shows that his speech was protected activity. A plaintiff does not speak "as a citizen" if he makes a statement "pursuant to [his] official duties." *Id.* at 421. For instance, the Supreme Court in *Garcetti* found writing disposition memoranda to be an official duty because it was what the plaintiff was employed to do as a calendar deputy. *Id.* at 421–22. Here, by contrast, Plaintiff was hired as a teacher and his complaints of FTCS Defendants' allegedly unlawful conduct were not made pursuant to his job duties. Plaintiff's speech also qualifies as a matter of public concern. A speech is a matter of public concern if it "generally addresses a social or political concern of the community," *Borden v. Sch. Dist. of the Twp. of East Brunswick*, 523 F.3d 153, 169–70 (3d Cir. 2008), for example speech that "bring[s] to light actual or potential wrongdoing or breach of public trust on the part of government officials," *Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir. 1993). The speech at issue here is Plaintiff's complaints of and stated intention to report Field's and Venditti's supposed violations of Pennsylvania law. As allegations of unlawful conduct on the part of officials, they constitute matters of public concern. Lastly, the Court must use the *Pickering* test to balance "the

interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. Examples of workplace disruption are impairing discipline, harmony among co-workers, close working relationships, performance of the speaker's duties, and regular operation of the enterprise. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). Because there is a high degree of public interest in exposing government wrongdoing, *Feldman v. Phila. Housing Auth.*, 43 F.3d 823, 829 (3d. Cir. 1994), and Defendant presents no evidence that Plaintiff's objections have impaired discipline, workplace harmony, or performance of employee duties, the Court finds the balance tips in favor of Plaintiff.

Next, the Court must examine whether Plaintiff's speech was a substantial factor in Defendant FTCS's retaliation. Plaintiff pleads that Defendant FTCS issued him a poor performance evaluation and requested he resign after he advised School Board President Marelia that he intended to blow the whistle on Field's and Venditti's unlawful conduct. The substantial factor element is a question of fact, and Plaintiff has supplied evidence to support a causal link between his speech and Defendant FTCS's retaliation. Thus, the Court finds that the Complaint adequately pleads a First Amendment retaliation claim and denies the Motion to Dismiss Count III.

### E.    Count IV — Fraud in the Inducement and Deceit

The elements of fraud or intentional misrepresentation under Pennsylvania law are: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994).

Pennsylvania courts have applied the elements of fraud to fraudulent in the inducement claims. *See Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1185 (Pa. Super. Ct. 2005). In a case of fraud in the inducement, a misrepresentation is material if the party would not have entered into the agreement but for the misrepresentation. *Id.* at 1186. A party's reliance upon another party's representations must be reasonable, and the determination of whether a party relied upon a false representation is a question of fact. *Id.* at 1189.

Allegations of fraud or mistake must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b). *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). The plaintiff can satisfy the Rule 9(b) requirement by: (1) pleading the date, place, or time of the fraud; or (2) otherwise injecting precision and some measure of substantiation in the allegations of fraud. *Id.*

FTCS Defendants move to dismiss Plaintiff's fraud in the inducement claim by arguing that FTCS Defendants did not conceal the fact that Field was the outgoing principal or that Field would serve as Plaintiff's supervisor. Such a reading of the Complaint is too narrow. The Complaint sets forth other examples of representations allegedly made by Defendant FTCS, including the reason why Field left the Principal position, the low turnover rate of Principals at FTCS, and why the Assistant Principal was not considered for the position. Further, Plaintiff pleads the occasions on which these statements occurred. Plaintiff has thus provided specific factual support for his fraud in the inducement claim, and the Court finds that Count IV states a plausible claim for relief.[3]

---

[3] Plaintiff also brings a separate claim for deceit. The Court finds no recent cases in Pennsylvania that have recognized a claim for deceit separate from fraud, and Plaintiff cites no authority stating as such. Accordingly, the Court analyzes Count IV as one claim for fraud in the inducement or deceit.

### F.      Count V — Promissory Estoppel

The promissory estoppel claim is dismissed, pursuant to Plaintiff's agreement. Pl.'s Opp'n Br. 31.

### G.      Count VII — Breach of Contract

To state a valid breach of contract claim under Pennsylvania law, the plaintiff must establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pennsylvania*, 895 A.2d 595, 600 (Pa. Super. Ct. 2006) (citations omitted). In the context of employment, an employee can bring a breach of contract claim based on a constructive discharge theory by establishing the elements of both a breach of contract claim and constructive discharge. *See Giannetti v. Consol. Graphics, Inc.*, No. Civ. 04-313, 2007 WL 152531, at *9 (E.D. Pa. Jan. 10, 2007). The plaintiff suffered a constructive discharge where "a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Id.* (citations omitted). The standard is an objective one. *Id.*

In the instant matter, Plaintiff alleges that he entered into a valid employment agreement with FTCS, FTCS Defendants breached the agreement by constructively terminating Plaintiff prior to the end of the employment term, and Plaintiff lost pay as a result of the breach. Assuming these facts to be true, the Court finds Plaintiff has adequately pleaded a breach of contract claim. To show constructive discharge, Plaintiff avers that FTCS Defendants criticized Plaintiff in front of students, parents, and staff members on at least two occasions; issued a poor performance review in retaliation for Plaintiff's threat to report Field's and Venditti's unlawful conduct; and requested Plaintiff's resignation in response to his objections regarding Field's and

Venditti's behavior, among other allegations. Pennsylvania courts have found that a large reduction in wages, transfer to a distant office, and changes in hours can support a finding of a constructive discharge. *Kroen v. Bedway Sec. Agency, Inc.*, 633 A.2d 628, 634 (Pa. 1993). A request that Plaintiff resign contributes to work conditions that are of similar difficulty. Thus, the Court finds that Plaintiff has provided sufficient factual material to support a plausible constructive discharge theory. As such, the Court denies FTCS Defendants' Motion to Dismiss Count VII.

### H.    Count VIII — Negligent Misrepresentation

Defendant FTCS also moves to dismiss Plaintiff's negligent misrepresentation claim for failing to identify instances of misrepresentation with adequate specificity. Under Pennsylvania law, a negligent misrepresentation is: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999). District courts in Pennsylvania disagree over whether the stricter pleading standard under Federal Rule of Civil Procedure 9(b) applies to negligent misrepresentation claims. *See Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 720 n.3 (E.D. Pa. 2013). The Court need not resolve the issue, however, as it finds the Complaint to meet the higher standard. The Complaint pleads that FTCS Defendants made misrepresentations in explaining why Field left his position as Principal, explaining why the Assistant Principal did not fill the role, and stating Plaintiff could anticipate a long career with growth opportunities at FTCS. These allegations also include the times and occasions where the statements were supposedly made. The Complaint thus identifies the alleged

misrepresentations with specificity and places FTCS Defendants on notice under Rule 9(b). As a result, the Court denies Defendant the Motion to Dismiss Count VIII.

OPM Defendants separately move to dismiss Count VIII for failure to state a plausible claim. With regards to OPM Defendants, the Complaint avers that FTCS used OPM to recruit for the Principal position and that OPM "negligently misrepresented and omitted certain material facts from Plaintiff during the hiring process." Compl. ¶ 22–23, 184. It fails to describe any actual misrepresentations by OPM Defendants. Plaintiff argues that OPM Defendants' failure to disclose certain information, including the high rate of turnover of past FTCS principals and Field's previous conduct, constitutes misrepresentations. Under Pennsylvania law, nondisclosure can form the basis of a negligent misrepresentation claim only if the defendant has a duty to speak. *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 656 (W.D. Pa. 1999). Such a duty "does not normally arise unless there is a confidential or fiduciary relationship between the parties," and a typical business relationship generally does not qualify. *Id.* Here, Plaintiff points to no Pennsylvania precedent finding such a duty to arise from a recruiter-job candidate relationship, and the Court is aware of none.

Because there is a possibility Plaintiff can amend his negligent misrepresentation claim to aver affirmative misrepresentations on the part of OPM Defendants, the Court dismisses Count VIII against OPM Defendants without prejudice.

## I.      Count IX — Intentional Infliction of Emotional Distress

FTCS Defendants additionally move to dismiss Plaintiff's claim of intentional infliction of emotional distress against Field and Venditti. To demonstrate a claim for intentional infliction of emotional distress ("IIED"): "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be

severe." *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 914 (3d Cir. 1982) (citations omitted). Conduct that is extreme and outrageous is "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (citations omitted). It is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988), *cert. denied*, 498 U.S. 811 (1990). For instance, Pennsylvania courts have found an employer's conduct to be extreme and outrageous where it exercised "particularly vile sexual harassment," but not where it engaged in a premeditated plan to force an employee to resign. *Televandos v. Vacation Charters, Ltd.*, 264 F. App'x 190, 192 (3d Cir. 2008); *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988). The issue of extreme and outrageous conduct is one for the court to determine in the first instance. *Johnson v. Caparelli*, 625 A.2d 668, 671 (Pa. Super. Ct. 1993).

Plaintiff appears to base his IIED claim on allegations that Field and Venditti created a hostile work environment by taking actions such as publicly denigrating Plaintiff; inaccurately telling Plaintiff that Field would be replacing him as Principal; issuing Plaintiff a poor performance evaluation; and rejecting the new teacher Plaintiff had hired. The behaviors asserted are not trivial. However, the standard of extreme and outrageous conduct is a high one, especially in the context of employment, and Plaintiff's allegations cannot be found to rise to conduct that is utterly intolerable in a civilized society. As such, this Court must dismiss Plaintiff's IIED claim with prejudice.

### J.      Count X — Tortious Interference with Contract

FTCS Defendants additionally seek to dismiss Plaintiff's tortious interference with contract claim against Venditti and Field, arguing that no contract existed between Plaintiff and a third party and the Complaint fails to state a claim for relief. The elements for a claim for intentional interference with a contractual relation are: "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." *Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 985 (Pa. Super. Ct. 1997)). Because a contract must exist between the plaintiff and a third party, "[i]t is well settled that a corporation cannot tortuously interfere with a contract to which it is a party." *Nix v. Temple Univ. of Com. Sys. of Higher Educ.*, 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991). Corporate agents and officers are not considered third parties unless they act outside the scope of employment, except where "the officer's sole motive in causing the corporation to breach the contract is actual malice toward the plaintiff, or if the officer's conduct is against the corporation's interest." *Wagner v. Tuscarora Sch. Dist.*, No. Civ. A. 1:04-CV-1133, 2006 WL 167731, at *12 (M.D. Pa. Jan. 20, 2006), *aff'd*, 225 F. App'x 68 (3d Cir. 2007).

Plaintiff here alleges that Venditti and Field harassed and retaliated against him because of a personal interest in harming him, as evinced by their actions publicly disparaging Plaintiff, concocting a story that a parent was petitioning for his replacement, and pre-writing a negative performance evaluation to use at an opportune moment. Accepting these allegations as true, the

Court finds that such facts are sufficient to raise a reasonable inference that Venditti and Field acted intentionally out of a personal animus and thereby outside their scopes of employment. Accordingly, the Court finds that Plaintiff has stated a plausible cause of action to survive a Motion to Dismiss.

IV.     **CONCLUSION**

For the foregoing reasons, FTCS Defendants' Motion to Dismiss is **GRANTED IN PART**. OPM Defendants' Motion to Dismiss is **GRANTED**. Counts II, V, and IX are **DISMISSED WITH PREJUDICE**, and Count VIII against OPM is **DISMISSED WITHOUT PREJUDICE**.


Dated:___12/2/2016___                              s/ Robert B. Kugler_____

                                                   ROBERT B. KUGLER

                                                   United State District Judge